IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-46

No. 351A20

Filed 23 April 2021

IN THE MATTER OF: G.D.H., J.X.W.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered on 6 April 2020 by Judge V.A. Davidian III in District Court, Wake County. This matter was calendared in the Supreme Court on 19 March 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mary Boyce Wells, Senior County Attorney, for petitioner-appellee Wake County Human Services.*

*Cranfill Sumner & Hartzog LLP, by Laura E. Dean, for appellee guardian ad litem.*

*Mary McCullers Reece for respondent-appellant mother.*

PER CURIAM.

¶ 1    Respondent-mother appeals from the trial court's order terminating her parental rights to her minor children G.D.H. (Glen)[1] and J.X.W. (Jermaine).[2] Counsel for respondent-mother has filed a no-merit brief pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. We conclude that the issues identified by

---

[1] Pseudonyms are used to protect the identities of the juveniles and for ease of reading.

[2] The trial court also terminated the parental rights of Glen and Jermaine's father. However, he is not a party to this appeal.

counsel as arguably supporting the appeal are meritless, and therefore we affirm the trial court's order.

On 4 October 2018, Wake County Human Services (WCHS) obtained nonsecure custody of Glen, Jermaine, and their older sibling T.I.R. (Thomas)[3]. WCHS filed a juvenile petition alleging that the children were neglected in that they did not receive proper care, supervision, or discipline; they were not provided necessary medical care; and they lived in an environment injurious to their welfare. The petition further alleged that WCHS had an extensive history with respondent-mother and her nine children dating back to 1995, having received twenty-seven Child Protective Services (CPS) reports with concerns of respondent-mother's chronic vagrancy, failure to provide for her children's basic needs, and improper discipline. WCHS received the most recent CPS report on 26 July 2018. The report alleged that respondent-mother had improperly disciplined Thomas by intentionally closing a car door on his leg and hitting him on the head with a hammer. Respondent-mother's actions raised concerns about her mental health and her ability to care for the children. The petition also alleged that WCHS continued to have serious concerns about respondent-mother's improper discipline, care, and supervision of the children; respondent-mother's unstable housing and income; the children's missed medical appointments; the children's excessive absences from school; and the children's poor hygiene. The

---

[3] Thomas is not a subject of this appeal.

petition went on to allege that respondent-mother had arranged for the children to live with relatives at various times while she attempted to obtain appropriate housing. However, respondent-mother failed to obtain such appropriate housing even when she had ample opportunities to do so; consequently, the relatives who had provided care for the children were no longer either willing or able to continue to do so. WCHS had also received reports of concerns about the commission of substance abuse by respondent-mother.

¶ 3        On 2 May 2019, the trial court entered an order adjudicating the children to be neglected juveniles. The children remained in the custody of WCHS. The trial court ordered respondent-mother to enter into and to comply with an Out of Home Family Services Agreement with WCHS that included requirements for respondent-mother to: (1) comply with recommendations of a substance abuse assessment, including random drug screens; (2) complete a psychological evaluation and follow recommendations; (3) engage in parenting education and demonstrate learned skills in visits with the children and in her decision making; (4) maintain and provide verification of lawful income sufficient to meet her needs and the needs of the children; (5) obtain, maintain, and provide verification of suitable housing; (6) resolve pending legal matters and refrain from further criminal activity; (7) establish, and comply with, a visitation agreement; (8) maintain contact with WCHS and timely notify WCHS of changes in circumstances. The trial court also authorized respondent-

mother to have supervised visitation with the children for a minimum of one hour per week.

¶ 4        In a permanency planning order entered after a 12 June 2019 hearing, the trial court set the primary permanent plan for the children as reunification with a concurrent permanent plan of adoption. However, in a permanency planning order entered after the next hearing, which was conducted on 23 September 2019, the trial court changed the primary permanent plan for the juveniles to adoption with a secondary plan of reunification upon finding that respondent-mother had not cooperated with recommended services or made progress toward reunification. Specifically, the trial court found that respondent-mother failed to follow through with parenting classes and was dismissed from her parenting program; submitted to substance abuse assessments but had not complied with recommended services or requested drug screens; had not provided documentation of her reported employment; failed to turn herself in for a probation violation, which resulted in her arrest; failed to follow through with mental health assessments and appointments; had been released from the DOSE program for domestic violence due to nonattendance; and had fabricated the death of her mother as an excuse to miss a review meeting on 21 August 2019.

¶ 5        On 31 October 2019, WCHS filed a motion to terminate respondent-mother's parental rights to Glen and Jermaine for neglect and for willful failure to make

reasonable progress. *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2019). The termination motion was heard on 19 February 2020 and 2 March 2020. In an order entered on 6 April 2020, the trial court determined that both grounds existed to terminate respondent-mother's parental rights as alleged in the motion. The trial court also concluded that termination of respondent-mother's parental rights was in the children's best interests. Accordingly, the trial court terminated respondent-mother's parental rights to Glen and Jermaine. Respondent appealed.

Due to the incorrect identification contained in respondent-mother's initial notice of appeal of the court to which she was appealing and of the order from which she was appealing, coupled with the untimeliness of her amended notice of appeal, respondent-mother filed a petition for writ of certiorari on 3 September 2020. We allowed respondent-mother's petition for writ of certiorari on 5 October 2020 in order to review the termination of parental rights order.

Counsel for respondent-mother has filed a no-merit brief on respondent-mother's behalf under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. In the brief, counsel identified two issues that could arguably support an appeal but also offered explanations for counsel's belief that these issues lacked merit. Counsel also advised respondent-mother of the right to file pro se written arguments on respondent-mother's own behalf and provided the parent with the documents necessary to do so. Respondent-mother has not submitted written arguments to this

Court.

This Court independently reviews issues identified by counsel in a no-merit brief filed pursuant to Rule 3.1(e). *In re L.E.M.*, 372 N.C. 396, 402 (2019). After considering the entire record and reviewing the issues identified by counsel in the no-merit brief, we are satisfied that the 6 April 2020 order is supported by clear, cogent, and convincing evidence and is based on proper legal grounds. Accordingly, we affirm the trial court's order terminating the parental rights of respondent-mother.

AFFIRMED.